## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 21-CR-231** |
| DEVRON BROWN | : | |

### *DEFENSE SENTENCING MEMORANDUM*

Devron Brown pled guilty to bank fraud (2 counts) in violation of 18 U.S.C. §1344(2), money laundering (9 counts) in violation of 18 U.S.C. §1957 and aiding and abetting in violation of 18 U.S.C. §2. The statutory sentencing range is for counts 1 and 2 are not more than 30 years imprisonment.

For the reasons set forth in this memorandum counsel suggests that the sentencing guidelines to be set at 27 months incarceration followed by an extended period of supervised release and restitution.

### A.

District Courts have discretion in determining sentences according to the provisions of 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220, at 259-60(2005). Section 3553(a)(2) states that a district court should impose a sentence sufficient, but not greater than necessary…(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed…training, medical care, or other correctional treatment….

Section 3553(a) further provides that the district court should weigh factors such as "the nature and circumstances of the offense and the history and characteristics of the defendant:" "the kinds of sentences available," "the [applicable] sentencing range[;]" the articulated policy goals of the guidelines: "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." § 3553(a)(1), (3)-(7).

The guidelines are now merely one of the factors that the Court must consider in sentencing:

> Now when a district court imposes and we review a sentence for reasonableness, the focal point is on 18 U.S.C. § 3553(a) (footnote omitted). In Section 3553(a), there are numerous factors for a court to consider and under *Booker's* remedial holding, the sentencing guideline range is one of those factors. That is, while the guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant. See e.g., *United States v. Webb*, 403 F.3d 373 (6thy Cir. 2005) ("While a district court must still give some consideration to the appropriate guideline range when making a sentence determination, a court is no longer bound by the applicable guidelines.) ...

> Once the appropriate advisory guidelines range is calculated, the district court throws this ingredient into the Section 3553(a) mix. Considering, as *Booker* requires, all of the relevant Section 3553(a) factors, including the guideline range, the district court then imposes a sentence.

*United States v. McBride*, 434 F.3d 470, 475-76 (6th Cir. 2006).

B.

Devron Brown is a 51-year-old Black male who presents to the Court differently than the PSR suggests. Mr. Brown has substantial ties to the community. He has owned and operated construction businesses for over 30 years. In that capacity he has provided numerous employment opportunities and apprenticeships through the years. He has also given back to the community through his charitable endeavors. Hashr

Islamic Center is a non-profit organization that he founded to assist first time homebuyers to purchase properties. This non-profit also helped to feed homeless people through his "Feed the Needy" program. (See Sentencing Exhibit #1)

Additionally, through his business ventures, Mr. Brown has built four senior center dialysis centers, two apartment buildings and over fifty homes: all to the benefit of many investors. (See Sentencing Exhibit #1)

Mr. Brown's homelife should also be taken into consideration for sentencing. There are five children who live in Florida that Mr. Brown supports financially and emotionally. (See Sentencing Document #41) He is the provider helping to pay the school tuition for his children and he maintains regular contact with them. One of those children has special needs due to irregular brain activity (See Sentencing Exhibit #2) and needs more support than the others. As such, Mr. Brown is requesting that the court allow him to serve his sentence in Florida so that he may be near enough to his children so that they may maintain contact with him.

Mr. Brown also financially supports his mother and 92-year-old grandmother. Mr. Brown is newly married to Marquita Taylor, who strongly supports him and stands by his side. Devron Brown does not pose a threat or a hazard to the community. In fact, his presence in the community is beneficial too many people.

We would also ask the court to take note that Mr. Brown has been locked down through much of his incarceration due to the Covid-19 pandemic, as well as, during the last two variants. Being locked down through no fault of his own has certainly been more difficult than serving a sentence without all those restrictions and should be factored into an appropriate sentence.

C.

An analysis of a proper sentence should begin with the loss amount. The PSR suggests a loss amount of $1,871,500. Although that amount is correct for purposes of a plea it should all be considered as a loss for sentencing. The amount used for purposes of calculating the guidelines should be $937,500. That is the amount that should be used as the second PPP loan was never approved, therefore Mr. Brown did not receive an additional benefit of $937,500, nor was there an attributable corresponding loss. Additionally, the 2016 JCB Excavator, $55,000: the 2018 Ford F350 XLT pickup, $50,474.62; and the property at 2916 Monarch Avenue, Deltona Florida, $250,000 were legitimate business expenses. Mr. Brown was a contractor that owned, or co-owned a number of businesses, including Superior Universal Builders. The preceding purchases were all for business. As such, he would argue that the amount of loss, not related to maintaining his business, is $582,025.38. The amount of $582,025.38 does not affect the sentencing matrix from the $937,500 but does accurately reflect that there were legitimate purchases made with the funds.

It has been Mr. Brown's intention to forfeit the excavator and truck that were purchased with PPP funds. However, these items have been in the possession of his son Tevron, who has since cut off all communication with Mr. Brown, his family, and defense counsel. Therefore Mr. Brown is unable to provide the Government with the location of those items.

D.

The PSR gives a 2-level specific adjustment applied to the calculation of the offense level. A strict reading of §3C1.1 does indicate that it is legally appropriate

however most of Mr. Brown's actions indicated a clear intention to cooperate with the Government. Mr. Brown owned many properties, mostly in his capacity as a business owner. He did not own them outright however his partner, Christopher Stegman, (See Exhibit 1) had agreed that the properties could be used to assure Mr. Brown's appearance. He provided the information to the courts, and it was sufficient for three different Judges to approve his release. The motions to permit relocation were permitted by the Magistrate Judge. Additionally, he properly advised probation when he moved to Maryland. There were no misrepresentations to the court, merely a miscommunication with the court.

A miscommunication with the Marshalls also led to Mr. Brown and the electronic monitor. Mr. Brown was to appear at the Baltimore office to replace his electronic monitor because it was not working properly. It was Mr. Brown who advised the Marshalls of this issue. However, when Mr. Brown headed to their office; he believed that he was being misled by someone and panicked. He did not flee to Mexico but instead went to Florida where he had a home. He turned himself in in less than a month and proceeded to advise the Government of his intention to plead guilty.

E.

Mr. Brown is entitled to an additional decrease in the offense level by 1 additional level pursuant to §3E1.1 (b). The AUSA, Kathryn Deal, was timely notified of the change of plea and permitted the government to avoid preparing for a trial and permitted the government and the court to allocate their resources efficiently.

F.

The actual loss suffered in this case would be more than $550,000 and less than $1,500,000.00. Accordingly, 14 levels should be added to the base offense level. USSG§2B1.1(b)(1)(H). The calculation that we are respectfully requesting the Court to consider is, for Counts I and II:

| | |
|---|---|
| Base offense level: | **7** |
| Specific offense level under §2B1.1(b)(1)(H): | **14** |
| Acceptance of responsibility: | **-3** |
| Total: | **18** |

And though the PSR has a Criminal History Category as III, we request that the Court find the convictions in 2003 and 2009 as stale. Even the 2011 conviction, for a summary offense, could be excluded by your Honor for in the Criminal History Category. However, at the most, we would request that Mr. Brown be given an Offense Level of 18 and a Category I. As such, the range would be 27-33 months.

## CONCLUSION

Finally, the Court may make a recommendation as to place of incarceration with the understanding that it is not binding on the BOP. Counsel requests that the Court recommend an FCI facility near Sanford Florida.

Respectfully submitted,

*Geoffrey V. Seay*

Date: April 7, 2022

Geoffrey V. Seay, Esquire
Attorney ID# 57744

## **CERTIFICATE OF SERVICE**

Geoffrey V. Seay hereby certifies that on the date indicated below, he caused to

be served on the following, via CM/ECF filing, the following document:

KATHRYN E. DEAL, ESQUIRE
Department of Justice, United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
Kathryn.deal@usdoj.gov

Respectfully submitted,

*Geoffrey V. Seay*

Date: April 7, 2022

Geoffrey V. Seay, Esquire
834 Chestnut Street
Suite 206
Philadelphia, PA 19107
610 812-4211
215 689-4347
seaylaw@aol.com

# UNITED STATES v. DEVRON BROWN
# 21-CR-231

# EXHIBIT 1

Christopher Stegman
6110 Lansdowne Avenue
Philadelphia, PA 19151
(267) 752-0455
Elijr536@gmail.com

Date: 01-04-2022

To: Judge Chad Kenny

Subject: (Devron Brown)

Dear Judge Chad Kenny,

Peace and Blessings to all. I, Christopher Stegman, am writing this character reference on

behalf of Devron Brown. I have known Mr. Brown for seven years. Our first encounter is one

I'll never forget. Devron bravely intervened upon a group of men trying to rob me. He

noticed that I did not blend well with others in the neighborhood and decided to step up in my

defense and we've remained friends ever since.

Devron is a very kind and caring individual. He always jumps at the opportunity to do

for others without being asked. His generosity towards others leaves him last on his list. Despite

all the things he has endured, Devron is a forgiving person and he doesn't hold grudges.

While Accompanying Mr Brown, I have had the opportunity to witness him renovate buildings

in the inner city of Philadelphia and rid areas of drug dealers and users. He provided adequate

shelter for families including myself and my wife. When we met, we were living in a dilapidated

house and He graciously allowed us to stay in his home rent free. I will always have the utmost

respect and love for him because of these kind acts.

In addition to caring for his friends and family, Devron has invested in building a Water Well In Africa to provide access to clean safe drinking water for thousands of poor women, men and children. Your Honor, I am willing to support Mr Brown by continuing the Charity projects he initiated before this incident. He is the spearhead of these good works that we would all like to see flourish if he's given a second chance to continue them.

Thank you for taking the time to learn a little more about my friend, Devron Brown, who I view as my brother. I am available to confirm the facts given by phone or email.


Kind Regards,

Christopher Stegman

**Neighbors Training Association**

2611 Napa St

Philadelphia Pa. 19132

267 333 0615

If it pleases the court,

I have known Mr. Devron Tahir Brown for many years. We established a close friendship and he invited me to his home. I met his wife and five children a loving family. Who depends on him for support as a husband and father. I can honestly say that the passion and love he has towards helping others and their families is tremendous. He has mentored young adults who were at risk through training in the construction field.

I continue now with my program Neighbors Training Associations here in Philadelphia.

Sincerely,

George Ali Payne

*George Ali Payne*

Commonwealth of Pennsylvania - Notary Seal
Alexis Sherrod, Notary Public
Philadelphia County
My commission expires March 29, 2023
Commission number 1348767
Member, Pennsylvania Association of Notaries

12.5.21

**Neighbors Training Association**

2611 Napa St

Philadelphia Pa. 19132

267 333 0615

I am one of many young adults who has worked with Mr. Brown Tahir youth program. He has mentored me and trained me in different Construction skills during his summer program. I am applying to Shippensburg University in PA.

Quadir Jones

*Quadir Jones*

Commonwealth of Pennsylvania - Notary Seal
Alexis Sherrod, Notary Public
Philadelphia County
My commission expires March 29, 2023
Commission number 1348767
Member, Pennsylvania Association of Notaries

12·5·21

**Neighbors Training Association**

2611 Napa St

Philadelphia Pa. 19132

267 333 0615

I was introduced to Tahir Mr. Brown through my grand pop. He has helped me with his training and advice in the remodeling of houses. I learned how to install designer lights and use a measuring tape. With the coaching and skills, I can go on.

Thanks,

Taquan Johnson

Myesha Bradshaw
700 Falls Pointe Dr
Apt 203
Durham, NC 27713
(919) 806-7667

Date: 12-10-2021

To: Judge Chad Kenny

Subject: ( Devron Brown)

Dear Judge Chad Kenny,

I am writing this letter on behalf of Devron Brown. Devron and I shared a close relationship as husband and wife, although we are no longer married, I am happy to write a reference for Mr. Brown regarding this matter.

Devron has been an instrumental active member of our communities between Philadelphia and Florida since I've known him. With his skills, I have witnessed him renovate and maintain shared public spaces at Masjid As-Salaam in Florida for the benefit of community members without seeking assistance from others. Many may not know this, but he has a soft spot for the elderly. He feels that it is his duty to make sure they are not neglected. On the day when we should have been honeymooning, Devron volunteered to assist my elderly father by laying concrete at his home to make it handicap accessible. Initially, I was bothered, but shortly thereafter I relaxed and looked at him in admiration, pleased that he willingly completed this task for our loved ones, without expecting anything in return. Among his many other charitable deeds he loves to perform ( not for boasting rights) are feeding the homeless. One cold night, In Charlotte, NC he chased a homeless man down to buy him a meal from one of the local food trucks there. During

our marriage, he exhibited a genuine interest in my children and I. He  provided financial and emotional support for us and for that I am forever grateful.

Devron Brown is an affectionate and loving father, son and grandson. He sincerely loves to provide for those under his care, so much so that he asked me to care for his Mom and Grandmom if something  should ever happen to him. Your Honor, I'm no longer his wife and I hope that he can assume those responsibilities again himself. Many of us have not witnessed our grandparents to live beyond the age of 90, however he is blessed to still have a loving grandparent that relies on him and he for her as emotional support. I believe Mr Brown neglects himself and makes his family members his main priority, thus clouding his judgement and putting himself last.

I understand the seriousness of this matter, and I would like to Thank you, Your Honor, for taking these thoughts into consideration as you deliberate on the appropriate sentence.

Respectfully,

Myesha J. Bradshaw

To whom it may concern,

I am writing you in regards to Mr. Devron Brown. I wanted to let you know that Mr. Brown is an upstanding man of the community. I know Mr. Brown from around the neighborhood through work with the community through housing and assisting the homeless. From my understanding Mr. Brown is a muslim and a good citizen of character, people make mistakes and I ask that you give him that second chance.

Thank you,
Mercedes Nunemann

Dennis T. Seip
2940 Midiron Ct.
Myrtle Beach, SC 29577
(410) 708-4954
dseip47@gmail.com

December 8, 2021

Your Honor,

Let me first briefly introduce myself. Currently retired living in Myrtle Beach, spent 42 years in the education system in Kent County Maryland. 38 years as a secondary teacher and coach, and 3 years as the county truant officer.

I am writing this letter in support of Devron L. Brown. I have known Devron for nearly 40 years. He was a member of the Kent Mat Monster wrestling team I founded and coached. After which I coached him in both wrestling and lacrosse at Kent County High School. Devron was also a student in my business class during his high school years. He was one of the hardest working dedicated athletes I have had the honor of coaching during my 38 year career. Always on time, willing to go the extra mile to achieve his goal of a state championship and scholarship to college. A great teammate always willing to help the younger athletes. Never once did I question his dedication and honesty. Because he was one of my son's good friends, he spent many nights at my home. During those years he often referred to me as "Dad". I never once questioned his moral character.

His continued support of his mother, children and wife is admirable. His exemplary work habits have led to his very successful and diversified business career. In summary, Devron is a great person and excellent friend. I will stand beside him and hope you are able to allow him the opportunity to right any wrong he is accused of. Please feel free to contact me if I can offer any further help.

Sincerely,

Dennis T. Seip

Wednesday, December 15, 2021

Mateen Ahmeen
1001 Sugartown Circle
Middletown Delaware 19709
2157785449

Devon Brown
# 50539-509
Federal Detention Center Philadelphia Pa
P.O. Box 562
Philadelphia Pa 19105
Seaylaw@aol.com

To whom it may concern:

Hi, my name is Mateen Ahmeen and I have known Devron Brown for many years and he is an upstanding guy.  I am a direct sales coordinator for an major cable company in Philadelphia and from being in his presence Mr. Brown has shown me nothing but professionalism and commitment to helping other people achieve their mission, goals and objectives. I have seen and been around Mr. Brown and he has shown me how a leader is supposed to engage with clients, customers and friends. Mr. Brown knows how to entertain, educate, execute but more importantly empower others.

If this letter can help, I sincerely hope and stand by this gentleman for he has changed so many peoples' lives. He is a mentor to so many young and old.  He always display failure is not an option and we can stand on top of our pile of failures or be buried by them and turn them into success. Mr. Brown is an inspiring person and look forward to seeing him doing great things for our community, family and small business.  To have known Mr. Brown and our relationship is truly priceless.

Mateen Ahmeen


P.S.  Mr. Brown is one invested in the business of family

.

December 2, 2021
Mr. Ian George
31 Ferry Street
Warminster, PA 18974

#50539-509
Federal Detention Center
Philadelphia.
P.O. Box 562
Phila, PA 19105
To the Presiding Magistrate,

I have known Devron Brown for the last three years. I know Devron Brown through numerous projects that we have worked together as I provided Design Services.

During this time I have found Devron Brown to be a decent person. In the time I have known him, he has been a good person who has dealt with me honestly.

Devron Brown has told me he has been charged with Federal felony.

I can't say why the event may has occurred. I am in a state of shock hearing about this situation.

I am sure the he is embarrassed about the incident and would like this to be resolve as quickly as possible. I am sure he will be willing to do all that's necessary to make things right.

Yours sincerely,

Ian George

*Ian George*

December 2, 2021

**From:** bunb0632009@hotmail.com,
**To:** seaylaw@aol.com,
**Subject:** devron brown
**Date:** Sun, Jan 9, 2022 12:22 pm

Sent from my iPhone

Begin forwarded

Dear Judge

I am a chef here in Kent County, Md and I am writing you today concerning Devron Brown. I have known him for 15 plus years. I know him as a piller in his community.  As long as I've known him he always was trying to help someone. He is also very devoted to his family. It would be devastating to the family to loose him now.
I just wanted  to show you another said of Devron that people don't always see.
Thank you in advance for taking time out of your busy day to learn a little more about Mr. Brown.
Sincerely,

Charles Bridles
Bubunb0632009@hotmail.com

**From:** islaam.salam@yahoo.com,
**To:** seaylaw@aol.com,
**Subject:** Devron Lamont Brown
**Date:** Thu, Jan 6, 2022 7:17 am

This letter is for the federal government of the United States attention to the judge handling the case of Devon Lamont Brown AKA Abdul Tahir I have known to hair for 49 years he is a man of Great character great strength and intelligence he has given countless jobs to literally hundreds of people throughout the years he's in great father and the pillar of the community is a strong belief in Islam and as such it is shown in his everyday life with his compassion towards the fellow man he is literally the greatest Carpenter I've ever had the pleasure of knowing I'm seeing countless times where he's taken money out of his pocket to feed people who have nothing to put clothes on people's back even to pay some people's rent and mortgage to lose this man out of the community to lose a staple in our community we really need him not just because we love him but he provides a lot of income to the community I myself have been employed by his company for years his skills acquired from the knowledge of his grandfather the unions and schools various schools in particular Temple University his knowledge of construction and carpentry far exceeds a normal labor and normal site manager or supervisor he is truly one of a kind we all make mistakes in life and this pandemic has put pressure on people to cause them to do things that they would normally not do I can guarantee if the courts what you mean it they would never ever see this man again I'm begging the courts to please please have mercy upon this man and give him the minimal if any punishment I believe that he has served his time he has lunch his lesson and I'm begging the courts please do not take this man away from the community away from my family and away from me if there's anything that I can do personally I will do it I will pay money if I have to I will do community service I will do whatever I have to do as a human being please have mercy upon this man and release some home to his family thank you sincerely Dante Clark

Sent from Yahoo Mail on Android

Stephen A. Schexnayder
40 Trala St.
Smyrna, DE 19977
(302) 513-1601
s.schex47@icloud.com

December 8, 2021


Your Honor,

Let me first briefly introduce myself. Currently retired living in Smyrna, DE, spent 19 years in the United States Marine Corps, served in Force Recon and retired at the rank of Major. Worked in the private sector as a
Chemical Engineer for 12 years and decided to retire early.

I am writing this letter in support of Devron L. Brown. I have known Devron for 2 years. He is always ready to help someone in need. He impressed me as an educated and soft-spoken individual. As a building contractor Devron was quite successful. He is very good at managing people and always on time, willing to go the extra mile to achieve his goal of completing his work. A great teammate always willing to help the employees. Never once did I question his dedication and honesty. I never once questioned his moral character.

His continued support of his mother, children and wife is admirable. His exemplary work habits have led to his very successful and diversified business career. In summary, Devron

is a great person and excellent friend. I will stand beside him and hope you are able to allow him the opportunity to right any wrong he is accused of. Please feel free to contact me if I can be of any further assistance.


Sincerely,


Stephen A. Schexnayder

Dear Honorable Judge,                                                    July 10, 2021

I am writing this letter in hopes to capture a few minutes of your time to request leniency for my children's father, Devron Brown, and to share the important role Devron plays in helping me raise our children. Devron and I share 5 amazing children together, 4 daughters and 2 sons between the ages of 12 and 3, and he has been active in their lives from birth. Devron plays a critical role in providing for our children as my income alone covers only a portion of their living expenses.

I greatly rely on Devron's assistance to help with sustaining a healthy and safe lifestyle for our children. Our 12 year old daughter suffers from Hydronephrosis, a condition that gravely affects her left kidney due to her kidney being enlarged. From birth she has been exposed to surgeries and multiple ongoing treatments and procedures that continue to monitor her condition. In addition, our 9 year old was born with Bilateral Cranial synostosis. A condition that caused her to go under an extensive cranial reconstructive surgery for her brain to grow and function properly as she continues to develop. She also goes under recurring treatments to monitor her condition as well. Along with my 5 year old son who is currently being evaluated for Autism.

Devron has always been a part of his children's lives. They suffer gravely emotionally when they don't see him for an extended period of time. I am very grateful that Devron has never been an absent father but I will suffer as well if he is removed from their lives as our children depend solely on both of our support. Devron has always been present in support of all of the children's school events and childhood memories. My children will suffer tremendously if their father is permanently removed from their lives for any extensive period of time. I don't expect for the courts to ignore the severity of his allegations, but I do hope that you are able to consider the impact that the removal of Devron will have on his children.

Devron is my only support system when it comes to raising my children. Both my parents are deceased and I have no other family support. He has never failed me and he has always brought joy and happiness to our children. Without him, I don't want to imagine the pain and loss my children will experience knowing they will have to live their lives without their father here to protect them and guide them. Or what I will go through struggling to provide for 5 children on my own. He has always been a motivating force in all that they accomplish and they love him very much.

I humbly ask that in this process, you take into consideration the lives that will be affected if Devron is removed from his children's lives. Our children are still very young and need the presence of both their parents to ensure their proper childhood development. Without him I will be forced to rely on government assistance which does not help completely with raising 5 children. I ask that you please put the welfare of my children first as they are the ones who will suffer the most as a result of your decision. Thank you in advance for your consideration.

Respectfully,

Tanida Rodriguez

Notary Public State of Florida
Britney Ally
My Commission HH 137079
Expires 08/02/2025

PATIENT NAME:  BROWN, JANNAH
DOB:  09/05/2011
DOS:  09/23/2021

# Pediatric Neurology P.A.

## Pediatric Epilepsy Center Of Central Florida
### Ronald Davis, MD, MPH, FAAP, FAES
### Frank A. Lopez, M.D.
#### Kay Taylor APRN, Jennifer Hermantin APRN, Leslie Pedreira APRN

**1245 W. Fairbanks Ave, #305**
**Winter Park, FL 32789**
**Ph: 407-293-1122**
**Fax: 407-253-2170**

ROUTINE EEG

Alfonso Mireles, MD
521 West State Road 434, Suite 101
Longwood, FL 32750

PATIENT NAME          : JANNAH BROWN
DOB                   : 09/05/2011
EMU #                 : 21-467
DATE OF STUDY         : 09/23/2021

INDICATION:  An EEG obtained on this patient to rule out epileptiform activity.

PROCEDURE:  This is a bedside routine surface electrographic video recording using the standard 10/20 placement electrode system for recording.  The patient was recorded in the awake and asleep state.  The patient also subjected to provocative testing using photic/hyperventilation stimulation accomplished.  The total duration of the recording was about 60 minutes.

During the awake state, background rhythm of 10 Hz alpha with an amplitude of 70 mcV.  There was reactivity and symmetry.  Continuity was appreciated throughout the tracing.

In the awake state, right temporoparietal sharps are noted.  No clinical change is noted.

The patient did sleep.  Vertex slowing with sharps noted.  No additional abnormalities were detected with sleep.

The patient was hyperventilated.  No additional abnormalities were noted.

The patient was subjected to photic stimulation in a stepwise driving fashion from 1-29 Hz.  No additional abnormalities were noted.

The heart rate was 100 and regular.

IMPRESSION:  This EEG was abnormal due to right temporoparietal sharps.

This would be indicative of underlying neuronal dysfunction.

Clinical correlation is suggested.

PATIENT NAME:  BROWN, JANNAH
DOB:  09/05/2011
DOS:  09/23/2021

Sincerely,
Ronald G. Davis, M.D., MPH, FAAP, FAES
Pediatric Neurology, P.A.

Lead Tech:  Maritza Santiago

RGD/zub  D: 09/23/21  T: 09/24/21;  Job #: 92852680_092321_42692810869

# UNITED STATES v. DEVRON BROWN
# 21-CR-231

# EXHIBIT 2

PATIENT NAME:  BROWN, JANNAH
DOB:  09/05/2011
DOS:  11/04/2021

# Pediatric Neurology P.A.

## Pediatric Epilepsy Center Of Central Florida
### Ronald Davis, MD, MPH, FAAP, FAES
### Frank A. Lopez, M.D.
### Kay Taylor APRN, Jennifer Hermantin APRN, Leslie Pedreira APRN

**1245 W. Fairbanks Ave, #305**
**Winter Park, FL 32789**
**Ph: 407-293-1122**
**Fax: 407-253-2170**

24-HOUR PROLONGED VIDEO EEG

Alfonso Mireles, MD
521 West State Road 434, Suite 101
Longwood, FL 32750

| | |
|---|---|
| PATIENT NAME | : JANNAH BROWN |
| DOB | : 09/05/2011 |
| EMU # | : 21-828 |
| DATE OF STUDY | : 11/04/2021 THROUGH 11/05/2021 |

INDICATION:  A 24-hour prolonged continuous video EEG obtained on this patient with history of new onset seizure. Rule out epileptiform activity.

PROCEDURE:  This patient underwent routine surface electrographic video recording using the standard 10/20 placement electrode system for recording.  The patient was recorded in the awake and sleep state.  The patient also subjected to provocative testing using photic/hyperventilation stimulation accomplished.  The total duration of the recording was about 24 hours.

During the awake state, there was a background rhythm of 9 Hz alpha with an amplitude of 75 mcV.  There was reactivity and symmetry.  Continuity was appreciated throughout the tracing.

In the awake state, intermittent right frontotemporal sharps as well as right temporal slowing is appreciated.  No clinical change is noted.

The patient on day #1 was subjected to photic stimulation in a stepwise driving fashion from 1-29 Hz.  No additional abnormalities were noted.

On day #1 of recording, the patient was hyperventilated.  No additional abnormalities were noted.

On day # 1 of recording, no pushbutton events.

Paperclip events were reviewed and review of the 24-hour tracing in its entirety demonstrating right frontotemporal sharps as well as intermittent right temporal slowing.  No clinical change.

Sleep was obtained.  Vertex slowing with sharps, sleep spindles and slow wave sleep noted.  Appropriate transition with the stages of sleep noted.  No additional abnormalities were detected with sleep.

PATIENT NAME:  BROWN, JANNAH
DOB:  09/05/2011
DOS:  11/04/2021

The independent spike detector computer software was utilized.  It did positively correlate with the previously noted abnormalities.

Throughout the course of the recording, heart rate varied, but ranged 90-100/min and was regular.

IMPRESSION:  This 24-hour prolonged continuous video EEG was abnormal due to:
1.  Right temporal slowing.
2.  Right frontotemporal sharps.

This would be indicative of underlying neuronal dysfunction.

This information is shared with the parent.  Adjustment in therapy provided.

Sincerely,
Ronald G. Davis, M.D., MPH, FAAP, FAES
Pediatric Neurology, P.A.

Lead Tech:  Maritza Santiago

RGD/aw  D:  11/05/21  T:  11/06/21;  Job #:  92857077_110421_42692810869

**PEDIATRIC NEUROLOGY, PA DBA NEUROLOGY & EPILEPSY C**
**PEDREIRA, LESLIE**

1245 W FAIRBANKS AVE. STE 305, WINTER PARK 32789-4878, FL
**Phone:** (407) 293-1122   **Fax:** (407) 253-2170

**Brown, Jannah(Female)**
MRN:
**DOB:** 09/05/2011, 10 yrs
**Phone:**
**Pri. Ins:** Aetna Better Health of Florida
**Visit Date:** 11/15/2021 | **Type:** Office Visit

## MEDICATIONS

### eRx

**Trileptal 300 mg/5 mL (60 mg/mL) oral suspension,** 1.5 ml BID x 7 days then increase to 3 ml BID by mouth ,**Qty:** 180,**Start Date:** 11/15/2021,**End Date:** 12/15/2021,**Prescribe Date:** 11/15/2021

**Valtoco 10 mg/spray (0.1 mL) nasal spray,** spray 1 spray(10MG) by intranasal route may repeat dose after 4 hours if necessary ,**Qty:** 6,**Start Date:** 08/04/2021,**End Date:** 09/03/2021,**Prescribe Date:** 08/04/2021

## CHIEF COMPLAINT

NOTE DICTATED

## HISTORY OF PRESENT ILLNESS

start Trileptal 1.5 ml twice daily for 1 week then increase to 3 ml twice daily
start vitamin B6 50 mg daily if needed for any mood change or behavior
labs—metabolic/genetic
MRI brain normal-copy given to mom along with EEG's
literature issued
monitor changes
follow up 3 months

## PROCEDURES (CPTS)

99214 - OFFICE O/P EST MOD 30-39 MIN